# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

RALPH WILLIAM LEE, # 368598          *

                                 *

v.                                    Civil Action No. CCB-12-1886

                                 *

S. GERGIUS, CO II, et al.             *

                                 *

\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM

Defendants Ray Lushbaugh and Wesley Bowers, by their counsel, have filed this Motion for Summary Judgment with verified supporting exhibits. (ECF No. 34). Self-represented plaintiff Ralph Lee ("Lee") has replied by filing a "Motion to Strike." (ECF No. 36).[1]

By order and memorandum dated July 19, 2013, summary judgment was granted as to defendants J. Michael Stouffer, Phillip Morgan, Bradley Wetzel, and Kellar Covington, and was denied as to defendant Ray Lushbaugh ("Lushbaugh"). (ECF Nos. 26 and 27). Specifically, summary judgment was denied in regard to Lee's excessive force claims against Lushbaugh arising from an incident on October 8, 2011, and Lushbaugh was granted leave to refile for summary judgment with discussion of Lee's allegations that he was given an injection during the incident, was beaten in an isolation cell, and was placed in a "strip cell" for forty days. (*See id.*). Additionally, counsel was directed to provide copies of all videotapes from the October 8, 2011, incident, the internal investigation report of the incident, the names of the officers who escorted Lee to the isolation cell, and an address for service of process for Wesley Bowers.[2] (*See id.*).

---

[1] Lee was granted time to file an opposition with materials in support pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). (ECF No. 35; *see also* ECF No. 23). Lee has filed no affidavits in support of his claims or to dispute defendants' verified exhibits.

[2] The Attorney General of the State of Maryland, by his counsel, has since accepted service on behalf of defendant Wesley Bowers. (ECF No. 32). The court's initial efforts to obtain service on Bowers by serving the institutional litigation coordinator were unsuccessful. (ECF No. 26, at 1 n.1).

Defendants indicate that the names of the correctional officers who escorted Lee to the isolation cell are not available. (Ridenour Decl., ECF No. 34, Ex. 4 ¶ 4). The only record of correctional officers who were involved in the incident is Defendant Bower's Notice of Inmate Rule Violation and Disciplinary Hearing, which states only that "another officer" was involved in the response and escort. (ECF No. 22, Ex. 1, at 8).[3] No videotape was ever taken of the incident on October 8, 2011, and no Serious Incident Reports or Use of Force Reports were generated concerning either the escort or any event occurring once Lee arrived in the isolation cell. (ECF No. 34, Ex. 4 ¶ 4). Further, Defendants indicate no Internal Investigation Unit ("IIU") report was written regarding the October 8, 2011 incident.[4] (Mercer Decl., ECF No. 34, Ex. 5 ¶ 7).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.* at 248.

---

[3] For the October 8th incident, Lee was found guilty of violating inmate rules by attempting to assault correctional officers. He was given 180 days of disciplinary segregation. (ECF No. 22, Ex. 1, at 7-15).

[4] In a letter dated October 23, 2012, to United States Congressman Elijah E. Cummings, Jon P. Galley, then Executive Director of the North Region for the Department of Public Safety and Correctional Services, stated Lee's excessive force claims were sent to the Internal Investigative Unit for investigation. (ECF No. 24, at 4). Defendants do not address that letter in the Motion for Summary Judgment. The absence of an IIU report, however, is not a material fact changing the outcome of this case.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted).

The court is mindful that Lee is a self-represented litigant and has construed his pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). It is the plaintiff's responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## DISCUSSION

Lee claims that on October 8, 2011, he was beaten by Lushbaugh and Bowers in the infirmary and in an infirmary "strip cell" at the Maryland Correctional Institution-Hagerstown (MCI-H) after he was handcuffed and injected with an "unknown substance" that caused him to fall asleep. (ECF No. 4, at 3-4). Additionally, Lee alleges that sometime after the October 8, 2011, incident, he was placed "in a strip cell" for 40 days. (*See id*. at 4).

### A. Facts

Defendants have submitted verified copies of Lee's medical and prison records. The facts set forth here are drawn from those verified records. On October 8, 2011, Lee, who was then a

patient in the infirmary at MCI-H, became disruptive, and corrections officials decided to transfer him to an isolation cell. (ECF No. 22, Ex. 3 ¶ 3). Lee told corrections officers that he was unable to move by himself.[5] (ECF No. 34, Ex. 1 ¶ 4).

Bowers arrived at the infirmary at approximately 9:40 p.m. after Lushbaugh issued a call for assistance. (*Id.*). Bowers attests that when he and another officer attempted to help Lee into a wheelchair, Lee resisted by stiffening his torso and lower body and slid onto the floor. (*Id.*). Bowers does not recall the identity of the other assisting correctional officer. (*Id.*).

Lee became "combative and started swinging his arms and legs in an attempt to hit correctional staff." (*Id.*). Correctional staff attempted to handcuff Lee who pulled his arm away and punched a trash can which flew in Bowers' direction. (*Id.*). According to Bowers, Lee's "actions were perceived as a threat and he was handcuffed. Medical staff then gave the Plaintiff an injection to calm him." (*Id.*). Lee was then moved to an infirmary isolation cell for observation. (*Id.*).

Lushbaugh and Bowers have each filed declarations refuting Lee's claims. Bowers attests he was not involved in escorting Lee to the infirmary isolation cell. (*Id.* ¶ 5). Bowers states, "[d]uring my encounter with Plaintiff, I did not beat him or otherwise touch him in an improper manner. I do not recall the identity of the correctional officer(s) who escorted Plaintiff to the isolation cell." (*Id.*). In his affidavit, Lushbaugh states that he left the scene after Lee was handcuffed. (ECF No. 22, Ex. 3 ¶¶ 3, 5).[6] Lushbaugh states that he "did not physically touch the Plaintiff. My role was simply to instruct the responding officers on what to do, and to be there in the event they needed backup." (*Id.* ¶ 5).

---

[5] Lee's medical concerns include complaints of difficulty walking and back pain. (ECF No. 4, at 3).

[6] The paragraphs in Lushbaugh's declaration appear to have been inadvertently misnumbered.

Defendants' counsel explains that due to inadvertent error, record of the injection was not submitted in support of the first Motion for Summary Judgment. (ECF No. 34-1, at 3 n.2). During the October 8, 2011, incident, Dr. Colin Ottey, a member of the medical staff, ordered an immediate one-time injection of Toradol via intra-muscular injection for Lee. (*Id.*; ECF No. 34, Ex. 2, at 11).[7] Lee's medical record of the event reads in pertinent part:

> IM [inmate] stated, "I want an extra dinner now, all you want to do is keep the extra meal for your fat ass." IM began to scream profanities. Officer Lushbaugh called for assitance [sic]. The officers attempted to console this patient. The patient tossed his trash cans at the officers. The officers attempted to assist this patient to sit in his wheel chair. This inmate stiffened his entire body and slip [sic] himself to the floor stating, "I am telling you I can not [sic] walk." At no time did staff request for this patient to walk. This patient started to thrash around on the floor, spitting. This patient stated, "You hit my head now I am dizzy." At no point and time was the inmate's head hit in any shape or form. Per Dr. Ottey 1 dose IM Toradol 60 mg/ml, refer to psych in the am. Per Dr. Roher, have this patient seen by medical doctor 10/09/11 for follow up eval to tx. . . . Mattress only in cell room to prevent self harm/safety, place in ISO room to prevent harm to self/others.

(ECF No. 34, Ex. 2, at 11).[8]

Lee returned to the infirmary the next day[9] and remained there until October 31, 2011, when he was transported to Johns Hopkins Hospital for medical concerns unrelated to the claims at issue here. (ECF No. 22, Ex. 2, at 78-134). He was discharged from Johns Hopkins Hospital on November 1, 2011. (*Id.* at 135). Lee's subsequent traffic history shows that he was then held in

---

[7] Toradol (Ketorolac) is a nonsteroidal anti-inflammatory drug used to relieve pain. *See* http://www.mayoclinic.com/health/drug-information/DR601483. The medical notes indicate 60mg/ml of Toradol were ordered, but only 30mg/ml were administered to Lee. (ECF No. 34, Ex. 2, at 11-13).

[8] Lee does not raise a claim of involuntary medication, and neither Dr. Ottey nor any other medical staff is named as a defendant in this case. Lee's medical records suggest the injection was administered to ensure his safety and that of correctional staff and other in the infirmary.

[9] On October 9, 2011, Lee reported suffering a head injury the previous night and complained of dizziness and numbness in his legs. (ECF No. 22, Ex. 2, at 79). Tamara Medina, R.N., reported Lee was alert and responsive with appropriate speech. She observed no swelling or abrasions to the head. (*Id.*). Later that day, when Dr. Colin Ottey, M.D. saw Lee during infirmary rounds, Lee reported increased pain. (ECF No. 22, Ex. 2, at 81). Lee did not report any injuries related to the October 8, 2011, incident during any other medical visits. (ECF No. 22, Ex. 2, at 81-254).

5

either administrative or disciplinary segregation at the Maryland Correctional Institution-Hagerstown and the Maryland Correctional Training Center. (ECF No. 34, Ex. 6, at 2-3). On September 17, 2012, Lee was transferred to Jessup Correctional Institution and placed on administrative segregation. (*Id.* at 2).

Lee provides no affidavits to dispute Defendants' declarations and other verified exhibits. To the extent Lee intends the Motion to Strike to serve as an affidavit in support of his claims and to dispute defendants' verified exhibits, his effort is unsuccessful. Lee's motion, which includes a sworn declaration of veracity, essentially summarizes defendants' Motion for Summary Judgment and exhibits, without refuting them or setting forth specific facts showing that there is a genuine issue for trial. (ECF No. 36).

**B. Claims Presented**

**1. Excessive Force**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citation omitted). A court must examine the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Hudson*, 503 U.S. at 7; *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkens v. Gaddy*, 559 U.S. 34, 36-37 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically,

6

liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Wilkens*, 559 U.S. at 37-38.

In this case, Lushbaugh attests that he played a supervisory role during the infirmary incident and did not touch Lee or escort him to the isolation cell. (ECF No. 22, Ex. 3 ¶¶ 3, 5). Lee provides no documentation to dispute Lushbaugh's sworn statement. No genuine issue of material fact is presented; thus, Lushbaugh is entitled to summary judgment in his favor as a matter of law.

Bowers attests that he assisted Lee into a wheelchair and was involved in handcuffing him. (ECF No. 34, Ex. 1 ¶ 4). The record shows Lee indicated he was unable to move on his own accord to the cell and Bowers was called to help. (*Id.*). When Lee resisted and became combative by cursing, flailing his arms and pushing a trash can, Bowers attempted to handcuff him. (*Id.*). Bowers' actions indicate neither malicious nor sadistic intent but rather intent to protect the inmate and those around him. Bowers states in his declaration that he was not involved in escorting Lee to the isolation cell and did not employ excessive force against him. (ECF No. 34, Ex. 1 ¶¶ 4, 5). Lee provides no affidavits or other admissible evidence to dispute Bowers declaration. Viewing the facts in the light most favorable to Lee, the court finds that no genuine issue of material fact is presented and Bowers is entitled to summary judgment in his favor as a matter of law. [10]

### 2. Conditions of Confinement

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To bring an Eighth Amendment claim based upon prison conditions, a prisoner must prove that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (quotations omitted). Moreover, "on an Eighth Amendment challenge to prison conditions a

---

[10] In light of these determinations, the court need not reach defendants' claimed qualified immunity defense.

plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). However, conditions which are merely restrictive or uncomfortable "are part of the penalty that criminal offenders pay for their offenses against society." *See Hudson*, 503 U.S. at 9.

Lee's allegation that he was placed in a "strip cell" for forty days fails to amount to a claim of constitutional dimension. As defendants note, Lee fails to specify what he means by "strip cell" or allege any resulting injury. Further, Lee fails to identify when he was assigned to such a cell or state why the conditions amounted to a deprivation of the minimal civilized measure of life's necessities. Absent some evidence of a significant injury suffered by Lee, the court does not find that he has presented a genuine issue of fact as to whether his constitutional rights were violated sufficient to survive a motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the court will grant defendants' Motion for Summary Judgment. A separate order follows.

October 24, 2013 /s/
Date Catherine C. Blake
United States District Judge